THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES H. CLARK *et al.*, Defendants-Appellants.

Second District Nos. 77-445, 77-446 cons.

Opinion filed May 4, 1979.—Rehearing denied June 4, 1979.

388

390

George B. Collins and Richard T. Wimmer, both of Collins & Amos, and George P. Lynch, both of Chicago, for appellants.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

In this consolidated appeal we review the convictions of the defendant James H. Clark, formerly county treasurer of Du Page County

and treasurer of several other public bodies in that county; and of the defendant Richard L. Curtis, formerly an official of the Michigan Avenue National Bank of Chicago. Following a jury trial Clark was convicted of multiple charges including the offenses of bribery (Ill. Rev. Stat. 1975, ch. 38, par. 33—1), violation of the county treasurer's act (Ill. Rev. Stat. 1975, ch. 36, par. 38), violation of the corrupt practices act (Ill. Rev. Stat. 1975, ch. 102, par. 3) and official misconduct (Ill. Rev. Stat. 1975, ch. 38, par. 33—3(d)), and Curtis was convicted of various counts of bribery and violation of the county treasurer's act. (The court directed a verdict as to additional counts of the indictments charging both defendants with conspiracy.) Each defendant was sentenced to 24 months probation with four to eight months of the period to be spent in a work release center and fined $10,000.

In substance, the indictments charged that on March 9, 1971, at the request of Clark, the Du Page County Forest Preserve District adopted a resolution designating the Michigan Avenue National Bank (Michigan) as a depository of public funds for the district controlled by Clark as its treasurer; on or about March 11, 1971, Curtis, then president of Michigan, arranged for a loan of $50,000 from the Drovers National Bank of Chicago (Drovers) for Clark; on March 16, 1971, at the request of Clark the Du Page County Board of Supervisors designated Michigan as a depository for county funds controlled by Clark as county treasurer; on or about March 29, 1971, Clark opened a non-interest-bearing demand deposit account on behalf of the Forest Preserve District at Michigan with an initial deposit of $516,790; on subsequent dates Clark deposited additional public funds in Michigan demand accounts, with deposits at times being in excess of $3,500,000 and additional funds in certificates of deposit at times in excess of $8,000,000. The indictments further charged that during 1971 Drovers made additional loans to Clark with a year end balance of $241,000, and that these loans were made through the good offices of Curtis in exchange for the use of Michigan as a depository for Du Page County public funds. It was further charged that during 1972 Clark's loans from Drovers increased to $439,000, in 1973 to $635,000, and in 1974 to $904,000; that the loans remained unpaid until July 10, 1975, when Clark filed a petition under chapter XII of the Federal Bankruptcy Act; and that in 1976 Drovers charged $693,000 of the loss to its bad debts reserve. The indictments further charged that Clark "knowingly accepted these loans for the performance of acts in his official capacity, such acts being the deposit of public funds under his control in the Michigan Avenue National Bank of Chicago."

Both defendants pleaded not guilty to all counts of the indictments. On July 6, 1976, Curtis moved for a severance. He also moved for a dismissal of the indictments on the ground that they did not state an

offense against him, and moved for a change of venue on the ground that he could not receive a fair trial in Du Page County. On July 22, 1976, defendant Clark moved for a transfer of the trial from Du Page County to some other venue on the grounds of prejudicial pretrial publicity. He also moved to dismiss the indictments. These motions were denied. On a later date defendant Clark also moved for a change of venue to Cook County alleging that none of the acts charged took place in Du Page County and that the inhabitants of that county were prejudiced against him. In addition, on Clark's motion several of the counts contained in the original indictments were severed. (We have deferred statement of the relevant evidence brought out in the trial of the case to the discussion of the various points raised by the defendants.)

Each defendant has claimed numerous errors as a basis for a reversal or for reversal and a remand for a new trial. The principal issues common to both appeals are first considered and include: (1) is the county treasurer's act unconstitutional; (2) should a severance have been granted; (3) was venue properly fixed in Du Page County; and (4) alternatively, should that question have gone to the jury?

## Constitutionality of the county treasurer's act.

■■ We first conclude that the county treasurer's act (Ill. Rev. Stat. 1975, ch. 36, par. 17 *et seq.*) is constitutional. The claim of unconstitutionality is essentially based on the claim of defendants that the act arbitrarily applies criminal sanctions only to the proscribed conduct in counties of more than 150,000 inhabitants, that it is impermissibly vague in its terms, and that it contains no requirement of a specific state of mind or intent to constitute a violation which entails severe consequences.

■ A classification based on population calls for the application of the same principles that would be applied when reviewing the constitutionality of any other legislative action. Thus, in upholding a statute which applied criminal sanctions in connection with the registration of copper purchases but which did not apply in municipalities with populations of 1 million or more, the Illinois Supeme Court upheld the legislation against constitutional attack, stating:

" '* * * a legislative classification based upon population will be sustained where founded on a rational difference of situation or condition existing in the persons or objects upon which it rests and there is a reasonable basis for the classification in view of the objects and purposes to be accomplished. [Citations.]' * * *

Furthermore, we will presume that the legislature surveyed the conditions existing in the population centers of this State and pursued the various means available to the General Assembly not available to this court in informing itself of these conditions before

enacting a classification based on population. This court will nullify such a classification only when it can be said that the same is 'clearly unreasonable or palpably arbitrary.' [Citations.]

Another established principle applicable to this case holds that those who attack the validity of the classification have the burden of proving that the same is unreasonable or arbitrary." (*People v. Palkes*, 52 Ill. 2d 472, 477 (1972).)

See also *People v. Warfield*, 26 Ill. App. 3d 772, 774-75 (1975); *cf. People v. Fix*, 44 Ill. App. 3d 607 (1976).

The legislature may well have believed that the problem of county treasurers taking "fees, perquisites and emoluments" (Ill. Rev. Stat. 1975, ch. 36, par. 36) in counties having populations exceeding 150,000 required special legislation. The incidence of county treasurers taking outside compensation may not have been perceived as being as great a problem in the smaller counties. The legislature may have concluded that existing bribery laws were sufficient to police the actions of county treasurers in such counties. (See *People v. Palkes*, 52 Ill. 2d 472, 478 (1972).) It should be remembered that the presumption is that a legislative classification is reasonable. (See, *e.g., Salsburg v. Maryland*, 346 U.S. 545, 553, 98 L. Ed. 281, 289, 74 S. Ct. 280, 284 (1954).) The defendants have not, in our view, overcome this presumption in this case. *People v. Palkes*, 52 Ill. 2d 472, 476-77 (1972).

The further argument that the terms "fees, perquisites and emoluments * * *" required under the act to be paid into the county treasury (Ill. Rev. Stat. 1975, ch. 36, par. 36) do not adequately, without definition, inform the defendants of the proscribed conduct, is next considered. Defendants note in this connection that the foreman of the jury sent a note to the judge requesting a definition for the terms "perquisites and emoluments." However, the jury was sufficiently informed that it should apply "common English usage."

■■ It is, of course, true that a criminal statute which seeks to punish an individual but fails to give him adequate notice of what conduct is prohibited would be an unconstitutional deprivation of due process. (*People v. Dednam*, 55 Ill. 2d 565, 568 (1973).) However, the test is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. (*People v. Dednam*, at 569). We conclude that the terms used pass this test.

The common dictionary definition of "perquisite" is "privilege, gain, or profit incidental to an employment in addition to regular salary or wages"; and "emolument" is defined as a "profit or perquisites from office, employment, or labor"; a "fee" is a "perquisite" or an "allowance"

(Webster's Third New International Dictionary (1961)); and "emolument" has been judicially defined "by reference to any standard * * * that which is received as a compensation for services, or as a pecuniary consideration annexed to the possession of an office, as, salary, fees and perquisites." (*People v. Foster*, 133 Ill. 496, 519 (1890). See also *County of Lake v. Westerfield*, 196 Ill. App. 432, 439 (1915).) The terms are therefore not so obscure that they fail to give a person of ordinary intelligence fair notice of what kind of conduct is forbidden by the statute. (*United States v. Harriss*, 347 U.S. 612, 617, 98 L. Ed. 989, 996, 74 S. Ct. 808, 812 (1954).) The fact that, as defendants argue, there may be marginal cases in which it is difficult to determine whether a gift or a purchase for a public official is within the proscription of the statute does not invalidate it. (See *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32, 9 L. Ed. 2d 561, 565, 83 S. Ct. 594, 597 (1963); *City of Decatur v. Kushmer*, 43 Ill. 2d 334, 336 (1969).) The use of the terms "fees, perquisites and emoluments" does not therefore make the statute unconstitutionally vague.

We reach the further argument of the defendants that the failure in the county treasurer's act (Ill. Rev. Stat. 1975, ch. 36, par. 38) to specify a required mental state creates an illegal absolute liability crime. Section 22 of the act (Ill. Rev. Stat. 1975, ch. 36, par. 38) provides in substance that the making of a personal profit or emolument by the county treasurer or any other county officer out of county monies by "loaning, depositing or otherwise using or disposing of the same in any manner whatsoever" is a class 3 felony. The section also provides that any other violation of the provisions of the county treasurer's act, if done "willfully," is punishable as a class 4 felony.

■ We cannot agree that section 22 of the treasurer's act is intended to impose absolute liability for any unintended personal profit or emolument in the loaning or depositing of county money. Where the purpose of a statute is the punishment of a crime with substantial consequences of imprisonment and large fines, rather than mere regulatory measures designed for the "achievement of some social betterment rather than the punishment of the crimes," absolute liability will not be found to be the intent of the legislature. (See *Morissette v. United States*, 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240, 247 (1952).) Instead, the statute will be read as incorporating a mental state requirement as prescribed by section 4—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 4—3 *et seq.*). Since the treasurer's act does not set out an appropriate state of mind for violation of the deposit and loan provision, either intent, knowledge or recklessness as a state of mind is applicable. (Ill. Rev. Stat. 1975, ch. 38, par. 4—3(b).) Consequently defendants' contention that this

section of the statute is unconstitutional because it imposes absolute liability is not persuasive. See *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 425 (1978).

## Venue

Both defendants have maintained at all times that venue was improperly laid in Du Page County. Section 1—6 of the Criminal Code requires that a criminal action shall be tried in the county where "the offense was committed", with exceptions not here material. (Ill. Rev. Stat. 1975, ch. 38, par. 1—6.) Both defendants therefore can only be tried in the county "where the offense was committed." Both defendants urge that none of the alleged acts in the indictments occurred in Du Page County. There appears to be no evidence that any of the loans were consummated, that any of the conversations took place or that there were any transfers of money in Du Page County. Rather, all of these operative facts took place in Cook County. If venue is properly to be found in Du Page County it must then be based on either the fact that Clark was a county official of Du Page County who sought the designation of depositories by the County Board of Supervisors in Du Page County or that, as a public officer of Du Page County, he breached a fiduciary duty to that county.

■■ It is, of course, true that a charge that a crime was committed in a particular county is a material averment which must be proved beyond a reasonable doubt to sustain a conviction, although it may be proved by circumstantial evidence. *(People v. Allen*, 413 Ill. 69, 76 (1952). See also Ill. Rev. Stat. 1975, ch. 38, par. 1—6.) If the record does not affirmatively show that the offense was committed in the county alleged in the indictment a judgment of conviction must be reversed. *(People v. O'Gara*, 271 Ill. 138, 142 (1915).) However, if a crime against the State is committed partly in one county and partly in another, venue may be proper in either county. *People v. Dillingham*, 111 Ill. App. 2d 161, 166 (1969).

As a general rule the situs of a crime is to be determined from the nature of the crime alleged and the location of the act or acts which constitute it. See, *e.g., Travis v. United States*, 364 U.S. 631, 5 L. Ed. 2d 340, 81 S. Ct. 358, 361 (1961).

■■ Here, the essence of the charges against Clark is that he was an unfaithful fiduciary who, as a public official of Du Page County, owed the people of that county the duty to deal impartially with public funds in accordance with the law which forbade him from accepting an emolument for doing an official act. Faithful performance of official duties requires that one not be called upon to make decisions that can advance an individual's interest. *(Brown v. Kirk*, 64 Ill. 2d 144, 149

(1976).) Further, a public fiduciary relationship can be abused even absent any loss to the public. *City of Chicago ex rel. Cohen v. Keane*, 64 Ill. 2d 559, 566 (1976). See also *United States v. Carter*, 217 U.S. 286, 54 L. Ed. 769, 30 S. Ct. 515, 520 (1910).

It should be further noted that Clark, as county treasurer of Du Page County, in order to relieve himself of personal responsibility in the deposit of county funds, necessarily called upon the County Board of Supervisors to designate the depositories pursuant to section 4 of the county treasurer's act. (Ill. Rev. Stat. 1975, ch. 36, par. 20). It was also to the people of Du Page County through their representative Board of Supervisors that he was under a duty to account for his management of county funds. Ill. Rev. Stat. 1975, ch. 36, pars. 10-15.

■■ An analogy can be made to embezzlement cases in which there are numerous holdings that the unfaithful agent can be tried either in the place where he converts his principal's property to his own use or in a place where he was under a duty to account. (See *Kossakowski v. People*, 177 Ill. 563, 568 (1899). See also *People v. Davis*, 269 Ill. 256, 271-72 (1915).) As noted in *Keane*, "[t]he fiduciary responsibility of a public officer cannot be less than that of a private individual." (64 Ill. 2d 559, 565.) We therefore conclude that where a public official by virtue of his public office is tried for alleged offenses which directly or indirectly involve the breach of fiduciary duties as to funds under his control, venue may properly be laid in the county of his office.

■■ We further conclude that venue as to Curtis was also properly fixed in Du Page County on the theory of accountability pursuant to section 1—6(n) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 1—6(n)). The theory of the charge against Curtis was that he aided in the commission of the charged offense in Du Page County and under the statute he could therefore be tried for the offense in either Du Page or Cook County.

■■ We further note that under the circumstances of this case the trial of the case in one of two adjoining counties in no way undercuts the policy which underlies the safeguards regarding the trial of crimes. That policy has been defined as "the unfairness and hardship to which trial in an environment alien to the accused exposes him." *United States v. Johnson*, 323 U.S. 273, 275, 89 L. Ed. 236, 238, 65 S. Ct. 249, 250 (1944).

The defendants additionally complain that even if the facts would support the fixing of venue in Du Page County the matter should have been determined by the jury under proper instructions. We agree that where the issue of venue is controverted the matter should be given to the jury. *People v. Anderson*, 355 Ill. 289, 303 (1934).

■■ However, in the instant case, there was no dispute as to whether Clark was the treasurer of Du Page County at the time of the alleged

offenses. It thus appears, in view of our holding that an unfaithful public fiduciary can be tried in the county where he was under a duty to account, that Du Page County was, as a matter of law, a proper venue for the trial of Clark. Indeed, it appears that the jury could not have venue improperly fixed in Du Page County unless it acquitted Clark of all charges, in which case the issue of venue would be of no consequence. Hence, we hold that the trial court did not err as to Clark in refusing to instruct the jury on venue.

■■■ Section 1—6(n) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 1—6(n)) provides that, "Where a person in one county solicits, aids, abets, agrees, or attempts to aid another in the planning or commission of an offense in another county, he may be tried for the offense in either county." It thus appears that venue was properly fixed, as a matter of law, as to defendant Curtis in Du Page County also. If the jury found him guilty of any of the offenses charged against him, it would necessarily have to find that he, at the very least, "solicited" Clark to commit a crime, the situs of which would be Du Page County. Hence, we also conclude that the trial court did not err as to Curtis in refusing to instruct the jury as to venue. In any event, the error, if any, in refusing to give an instruction on this issue as to either defendant was harmless beyond a reasonable doubt. See, *e.g., People v. Ward*, 32 Ill. 2d 253, 256 (1965).

## Severance

■■ We also cannot agree with the contention of both defendants that the failure to grant a severance of trial amounted to reversible error.

■■ Severance motions are subject to well established rules. Normally, persons indicted jointly for the commission of an offense should be tried together (*People v. Brooks*, 51 Ill. 2d 156, 166 (1972)); the motion is addressed to the sound discretion of the trial court which a reviewing court will not interfere within the absence of abuse of discretion. (*People v. Yonder*, 44 Ill. 2d 376, 386 (1969).) The trial court in ruling on the motion, must consider whether the defenses of those being jointly tried are so antagonistic that a fair trial can be had only by severance (44 Ill. 2d 376, 386. See also Ill. Rev. Stat. 1975, ch. 38, par. 114—8); but the mere apprehension of a conflicting situation is not sufficient grounds for granting the motion (*People v. Nickson*, 58 Ill. App. 3d 470, 482 (1978)); and a trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice appears. *Schaffer v. United States*, 362 U.S. 511, 4 L. Ed. 2d 921, 80 S. Ct. 945, 948 (1960); *cf. People v. Betson*, 362 Ill. 502, 507-08 (1936).

Clark in his motion for severance presented prior to trial alleged that

he would be prejudiced if required to be tried with the co-defendants (Curtis, as well as with other defendants employed by the banks involved who were alleged to be part of the conspiracies and were later dismissed from the case). Clark stated that if tried alone he would subpoena the co-defendants to testify in his behalf; that they had indicated that they would give favorable testimony but would not testify in a joint trial "when said testimony could incriminate them in any way"; and their testimony would

"* * * tend to indicate that the Defendant did not commit any of the offenses with which he is charged and their testimony would further show that the Defendant was totally unaware of the transfer of amounts of cash in various county depository banks to banks in which the Defendant had taken loans. Said transfers being in the form of compensating balances."

Curtis also moved for a severance before trial essentially on the grounds that the people of Du Page County, because of the great publicity given the case, had formed opinions as to Clark's guilt or innocence which in either case would reflect unfavorably on Curtis, who was not a resident of nor known in the county.

In order to properly analyze the effect of the pretrial motions to sever as well as the renewal of the motions during trial, we must briefly review the evidence which would bear on the claims of prejudice.

The State introduced several letters written by Curtis to one of the original co-defendants, Whelan, who was president of Drovers. One letter dated March 16, 1971, reads:

"While this letter obviously must be kept in a confidential file, it is our assurance to you that a $50,000 advance to James H. Clark, the County Treasurer of DuPage County, will be repurchased upon your request.

This matter has been reviewed with my Executive Committee and they are aware that the note is being placed in your bank and that we are under obligation to repurchase it upon demand."

A letter dated March 29, 1971:

"My friend, James Clark, the Treasurer of DuPage County has now asked that we change his borrowing arrangement just slightly.

On April 6 he would like to close the purchase contract and would like to do so if possible at the Drovers National Bank. He is buying his acreage under a contract wherein he will pay $50,000 down and the balance of $250,000 will be in a form of a first real estate mortgage and taken back by the sellers. He would then put the acreage and property into a trust in the Drovers National Bank and

assign to the note the beneficial interest. He would then personally guarantee the back side of the note.

If you would be so good as to assign a trust number for the purpose of this land trust and make some arrangement for a closing in your organization on April 6, I would be most appreciative."

The State also produced a letter written by Curtis to Clark dated March 11, 1971, in which Curtis notes that he is

"* * * enclosing a note for the $50,000 loan which we have arranged for you through the Drovers National Bank of Chicago. It is undated, and the funds will be made available when needed.

* * *

Jim, I certainly enjoyed our lunch yesterday and look forward to working closely with you. I feel confident that it can be a practical and workable arrangement."

A letter dated June 24, 1971 from Curtis to Patrick C. O'Malley, vice president of Drovers, was admitted in evidence as to Curtis and states:

"This letter is being written in connection with the $50,000 secured loan which you extended to Mr. James H. Clark on June 23, 1971.

We hereby agree that in the case of default on this loan we will repurchase it at your request."

Mr. O'Malley was also called. He testified that all loans from Drovers to Mr. Clark had been renewed as recently as 1975. The bank ledger, although not entirely clear, indicates a renewal of a loan of $871,561.23 on the Clark account as late as March 10, 1975.

O'Malley further testified that some time in the spring or early summer of 1971 Mr. Whelan had a conversation with him in which Whelan stated that Clark wanted to borrow more money from Drovers, but that Drovers would extend the credit only on the conditions that the loan be funded by Michigan and also that Michigan agree to repurchase at any time. (This testimony was admitted only as to defendant Whelan.)

O'Malley further testified to a conversation with Clark which was admitted as to Clark. The conversation took place on or about June 4, 1974, in a coffee shop across from Drovers. O'Malley testified:

"* * * he [Clark] said to me that he hoped that there wasn't anything in our files to tie Michigan Avenue to his situation with us, his borrowings."

O'Malley was also asked the following questions and gave the following answers:

"Q. At the time the loans were being made * * *. Would you have made those loans, sir, without the guarantee of Michigan Avenue and the funding of Michigan Avenue National Bank?

A. I would have to separate those two. The funding was not important to myself as a lending officer. It wasn't unimportant, but it wasn't something that would make you make a loan or not.

The guarantee of Michigan Avenue National Bank certainly was an integral part and the reason for making the credit."

An exchange of letters between O'Malley and Curtis was also produced. One, dated August 27, 1974, from O'Malley to Curtis stated:

"As you know, we have been providing the funds for Mr. Clark for some time, and he has requested a 31 day renewal which will make the maturity September 16, 1974. We are inclined to go along with the borrower provided of course, that he pays the interest up to date.

At the maturity of the new extension, we will be looking for payment in full, and will request that the Michigan Avenue National Bank provide these funds if Mr. Clark does not. Thank you for your cooperation."

A letter from Curtis to O'Malley dated September 3, 1974, stated:

"This is with regard to the James H. Clark matter. We are extremely appreciative of your service and consideration in this situation and thoroughly understand your present position.

Mr. Clark is right in the middle of a political election which probably will run through November. If you could possibly extend the transaction for ninety days (rather than thirty days), I feel sure that he will be able to find a new home for this particular credit."

Donald Norris, an officer at Drovers, also testified for the People. He stated that he had a conversation with Mr. Clark some time after May 14, 1974, in which he discussed the problem of Mr. Clark's delinquent loans. Mr. Norris advised Mr. Clark that the Loan Committee at Drovers might look favorably upon increasing the principal to include the accrued interest, "if the take-out letter from the Michigan Avenue National Bank were increased to include the interest amount." Mr. Norris was then asked what Mr. Clark's reaction was to this question. He stated: "He [Mr. Clark] said he would like to have those letters cancelled and returned, or—and returned to the Michigan Avenue National Bank, and that we had—we, the Drovers, had plenty of collateral to protect our loan position without them. * * * He said that letter, or those letters, are bound to get us in trouble or me in trouble some words to that effect." Mr. Norris informed Mr. Clark that it would be impossible to cancel the letters since the letters of guarantee were "a very important part of our collateral package securing the loan."

Mr. Norris' testimony concluded with the admission of a letter from Mr. Curtis. The letter was admitted only against Curtis. The letter states, in pertinent part:

"James H. Clark is again making an additional request for $100,000 and feels that the security which you presently hold is adequate for that type of advance.

* * *

He [Mr. Clark], of course, indicates that with DuPage County taxes due June 1 ample supporting balances could follow. * * *"

A memorandum written by Curtis dated September 10, 1974, was introduced and states:

"I would like to increase our balances at the Drovers National Bank by a total of $30,000. Drovers is doing some additional funding for James Clark. *Mr. Clark in turn will increase our balances by a substantial amount.*

If this is satisfactory, I would appreciate your doing so on September 11 (1974). Please notify Mr. Schultz of the Drovers when the transfer has been made. * * *" (Emphasis added).

Martin Ott, an officer of the First Bank of Oak Park (Oak Park), was also called as a witness. He stated, with respect to the Oak Park loans to Mr. Clark, that Mr. Casey, another Oak Park officer, had told him that, "The Michigan Avenue National Bank would fully fund the loan by keeping a balance, * * * by having the total fully funded at our bank in demand deposits [of] the Michigan Avenue Bank."

The refusal to grant a severance on the pretrial motion of Clark was not an improper exercise of discretion. The assertion that the co-defendants would testify only to Clark's alleged unawareness of "compensating balances" maintained by Michigan at the other banks where Clark was alleged to have made loans would not have fully exculpated Clark. It was the State's theory that Clark and Curtis had reached an understanding sometime in early 1971 under which Clark would deposit Du Page County funds in Michigan and Curtis would extend his good offices to procure credit for Clark. The testimony would have merely indicated that Clark was not aware of all the interbank arrangements.

■■ As noted in *United States v. Boscia,* 573 F.2d 827, 832 (3d Cir. 1978), in determining the necessity of a severance, courts have emphasized the following four factors: "(1) the likelihood of co-defendants testifying; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying co-defendants could be impeached; (4) judicial economy."

Within these guidelines it should be noted that when Clark made his pretrial motion for severance he did not attach any affidavits as to the

proposed testimony. Further, the proposed testimony would have been only partially exculpatory. Further, in view of the correspondence later introduced, the degree to which the co-defendants could be impeached if they testified as Clark indicated was very high. In addition, at this time there were four defendants in the case and the interests of judicial economy favored denying the motion.

The pretrial motion by Curtis stands on somewhat different grounds but was likewise properly denied in the trial court's discretion in our view. The trial court decided, and we think properly so, that the reputation of Clark in the community did not prejudice his ability to obtain a fair trial and we think that the trial court properly ruled also that Curtis was not so prejudiced. It has been held that a decision to sever must not be based on whether the defendant would have a better chance of acquittal if severance were allowed but upon whether the defendant was denied a fair trial because of the joinder. (*United States v. Knowles*, 572 F.2d 267, 270 (10th Cir. 1978).) We find no basis in the alternative ground in the pretrial motion for severance to support Curtis' claim that the severance should have been granted because of antagonistic defenses.

The motion for severance made by Clark during the trial was in some respects stronger in that it included an offer of proof to the effect that Curtis would be willing to testify that Clark was unaware of either the "letters of guarantee" or the "compensating balances." However, at this point the State had also completed a long and intricate case in chief. And the interests of judicial economy in denying the severance were far more compelling. Also, as noted above, Curtis would have been subject to devastating impeachment if he had testified in the manner indicated.

### Evidentiary Rulings (Clark)

We then reach other claims of error of the respective defendants, beginning with defendant James H. Clark (77-445).

■■ Clark first makes the additional contention that there was reversible error in the denial of his motion for a mistrial made after he and his co-defendant had been acquitted of the offense of conspiracy. The basis of the motion was prejudicial effect upon him because of the introduction of what he claims was a great number of instances where evidence was allegedly admitted under the co-conspirator exception to the hearsay rule. The rule is that an admission by an alleged co-conspirator uttered in furtherance of the conspiracy is regarded as a vicarious admission by every other member of the conspiracy and is admissible against all members of the conspiracy. *Tribune Co. v. Thompson*, 342 Ill. 503, 530 (1930).

Clark argues that since the predicate to the admission of such evidence is the making of a prima facie case that a conspiracy did indeed

exist (*People v. Jackson*, 49 Ill. App. 3d 1018, 1020 (1977)), and since the State did not satisfy this burden, the continuation of the trial was extremely prejudicial.

However, most of the numerous assignments of error by Clark in this respect are unsupported by the record. For example, as to the testimony of Donald Anderson, the business records of Michigan were admissible pursuant to the business records exception to the hearsay rule; as to Sylvia Labeau, who authenticated a record from Curtis to co-defendant Whelan, the letter was received in evidence only in the prosecution against Whelan and Curtis; the testimony of Les Jordan in authenticating a letter sent to Whelan was offered in evidence only as to Whelan; the testimony of Margaret Williams which authenticated a letter of March 11, 1971, from Curtis to Clark resulted in the letter being admitted as to both defendants with Clark's counsel specifically stating that he had no objection to the admission.

■■ There are apparently a few instances, toward the end of the trial, where the court admitted evidence as to the defendants under the co-conspirator exception. The error, however, is harmless, since, in our judgment, the exclusion of this evidence would not have made the State's case "significantly less persuasive" in the mind of an average juror. See *Schneble v. Florida*, 405 U.S. 427, 432, 31 L. Ed. 2d 340, 345, 92 S. Ct. 1056, 1059-60 (1972).

■■ A more serious matter is involved in Clark's claim that there was a mass of highly incriminating evidence which was limited by judicial instruction to one or another of the several co-defendants, which put too great a burden upon the jury to separate in their deliberations. The traditional view, however, is that the reception of a mass of highly inculpatory evidence, admissible as to one defendant but inadmissible as to another, will not be grounds for reversal as long as the trial judge instructs the jury to limit the use it makes of the evidence to only one of the defendants. See *People v. Stella*, 344 Ill. 589, 593 (1931).

■■ Admittedly, the trial judge's instructions in this regard were not always entirely clear. However, any error in this respect appears to be harmless beyond a reasonable doubt. See *People v. Henenberg*, 37 Ill. App. 3d 464, 469 (1976).

Clark contends further that the denial of motions for a continuance, to discharge the venire, to dismiss the indictment, and to appoint special counsel offers grounds for reversal.

### Motion for Continuance

Briefly summarized it appears that earlier counsel had been granted leave to withdraw on January 10, 1977. Clark's present attorney appeared

before one of the Du Page County judges on January 24, 1977, and moved for and was granted a substitution of judges. The judge to whom the case was first assigned stated that the jury would be selected during the week starting March 7, 1977, but that the trial would not begin until March 28, 1977, as the judge would be on vacation. This was agreeable to present counsel who entered a formal appearance for Clark. However, the case was reassigned to another judge for trial who scheduled the taking of evidence in the case to begin immediately after the selection of the jury which was to start on March 7. Clark's motion to begin the evidentiary phase of the trial on March 28 was denied. The defendant argues that because of the complexity of the case refusal to grant a three-week continuance for taking evidence was a denial of due process.

■■ We think that a continuance could have been granted when defendant, apparently without fault on his part, was required to retain new counsel at a very late hour, leaving only 34 days from February 1, 1977, the time present counsel was granted leave to file his appearance, to prepare for a complex trial. However, "[b]efore it can be said that such a motion has been improperly denied, it must appear that the refusal to grant additional time has in some manner embarrassed the accused in his defense and thereby prejudiced his rights." (*People v. Wilson*, 29 Ill. 2d 82, 92 (1963).) Clark has not indicated in what way he was prejudiced. Our complete examination of the record shows a very capable and vigorous defense and indicates that defendant's counsel was not overmatched in the trial. (*People v. Clark*, 9 Ill. 2d 46, 50 (1956).) No reference is made to any potentially favorable witnesses who might have been available but were not called for want of preparation time. (*People v. Coleman*, 45 Ill. 2d 466, 469 (1970).) In the absence of a showing of prejudice the denial of the motion for a continuance is not cause for reversal.

*Motion for Discharge of Venire*

■■ The motion for a discharge of the venire made by a co-defendant, Whelan, and adopted by all defendants was based on the alleged violation of section 8 of the jurors act (Ill. Rev. Stat. 1975, ch. 78, par. 8) in that a special panel of 250 persons was called rather than the 100 specified in the statute. In addition Clark claimed illegal procedure in the fact that the summons indicated the case would take six weeks to try, a telephone number was included for responses and the information given the caller that he was being summoned to serve on the "Clark case." Again we agree that these were technical errors but conclude that no prejudice resulted. Errors in the selection of jurors do not require reversal of a conviction when no prejudice is shown. *Henry v. People*, 198 Ill. 162, 186 (1902). See also *People v. Gierens*, 400 Ill. 347, 351 (1948).

### Claim of Duplicity

 The motion to dismiss the indictments claimed duplicity in the various counts. Clark argues in effect that each time he received a loan from Drovers in 1971, 1972, 1973 and 1974, if the State's theory of prosecution was approved, he committed a separate act of bribery, official misconduct or other violations charged. Therefore he reasons that the indictments should have contained a separate count for each act of receiving money from his creditors. We are not so persuaded. Each time Drovers extended credit to him in the period 1971-1974 it did so as a part of a single comprehensive transaction in which Michigan undertook to guarantee Clark's loans in return for his action in keeping large sums of money on deposit at Michigan. The same is true of the several transactions with Oak Park. The State could properly charge one count of an offense predicated on numerous acts taking place over a period of three years. Clearly, separate offenses can be charged in different counts or in one count of one indictment if the offenses are part of a single transaction. (*People v. McMullen*, 400 Ill. 253, 255 (1948).) The indictments were properly drawn to charge the continuing offense. See *People v. Dillingham*, 111 Ill. App. 2d 161, 165 (1969); *People v. Lee*, 57 Ill. App. 3d 927, 933-34 (1978).

### Appointment of Counsel

 █ Nor did the trial court err in failing to appoint the State's Attorney of Du Page County or other competent counsel to represent this defendant. The charge of making a personal profit or emolument out of county monies by depositing them, and the acceptance of credit from Drovers and Oak Park for personal use, were not actions taken by Clark under color of or by virtue of his public office. Therefore the State's Attorney was under no obligation pursuant to section 5 of the attorney general's act (Ill. Rev. Stat. 1975, ch. 14, par. 5) to defend Clark. And since Clark was not charged with the commission of criminal acts under the color of his official position the trial court did not abuse its discretion in refusing to appoint other competent counsel to defend him. *Cf. People ex rel. Wall v. Graber*, 394 Ill. 362, 373 (1946).

### Reasonable Doubt

 Clark also contends that he was not proven guilty beyond a reasonable doubt. The testimony of Murphy, the employee of Michigan, directly implicated Clark. Among other things he testified that he had a conversation with Clark during the course of which the terms of the Drovers loan were discussed. Clark, according to Murphy, stated that he appreciated the assistance that Michigan had rendered him and that he

would reciprocate to the best of his ability. Murphy also testified that after Oak Park had extended credit to Clark, the latter requested additional credit. Further, Murphy testified that about August 1971 he spoke with Clark about the size of the Du Page County accounts at Michigan indicating that they were below the amount Clark had promised to keep on deposit. Murphy testified that Clark replied that he would take steps to increase the amount. In addition O'Malley, the vice president of Drovers, testified to a conversation in which he said that Clark told him that "he hoped that there wasn't anything in our files to tie Michigan Avenue to his situation with us, his borrowings." Counsel for Clark argues that this was not inculpatory because it indicated that Clark did not, at any time prior to this conversation, know that there was any connection between the deposit of county funds and the loans to him personally and that O'Malley in fact testified that he never considered the loans to Clark as bribes but dealt with them as secured loans. The jury, however, could draw a different inference from the testimony. In addition, the jury could take into consideration the fact that the County of Du Page opened large checking and savings accounts with Michigan at the same time that the latter made "compensating balances" at Drovers and Oak Park. This was strong circumstantial evidence from which the jury could conclude that Clark caused the deposits of the Du Page County funds to be made to Michigan as quid pro quo for the use of that bank's good offices in obtaining loans from Drovers and Oak Park. We cannot substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses and will not reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion*, 67 Ill. 2d 564, 578 (1977).) The testimony together with the circumstantial evidence was sufficient to allow the jury to find beyond a reasonable doubt that the defendant had in fact committed the crimes alleged in the indictments.

### *Sufficiency of the Indictments against Clark*

■■ Clark's pretrial motion to dismiss the indictments states, in general terms, that the indictments fail to state the mens rea necessary for a conviction under the county treasurer's act (Ill. Rev. Stat. 1975, ch. 36, par. 38) and under the corrupt practices act (Ill. Rev. Stat. 1975, ch. 102, par. 3). Further, Clark's motion in arrest of judgment also charges, in general terms, that the indictments fail to allege the appropriate mental state. It thus appears that Clark preserved his right, in the trial court, to challenge the sufficiency of those counts of the indictments that charged him with violations of the county treasurer's act and of the corrupt practices act. (See, *e.g.*, *People v. Gilmore*, 63 Ill. 2d 23, 28 (1976).) Clark

has not specifically raised in this court the issue of the sufficiency of the indictments on the ground that they failed to charge the proper mens rea element. He has, however, challenged the sufficiency of the indictments on the ground that venue was not properly charged. In view of these facts, we choose to reach the issue of the sufficiency of those counts of the indictments that charge Clark with offenses against the county treasurer's act and the corrupt practices act. See Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)).

■■■ We have indicated above that, in our judgment, a person cannot violate either the county treasurer's act with a guilty mind (intention, knowledge or recklessness). (For a further discussion of this issue, see *People v. Malone*, 71 Ill. App. 3d 231 (1979).) As a consequence, we must conclude that the three counts that charged Clark with offending the county treasurer's act and the three counts that charged him with offending the corrupt practices act failed to comply with section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—3) which requires that, "[a] charge shall * * * allege the commission of an offense by * * * setting forth the nature and elements of the offense charged." It thus follows that the six indictments against Clark, charging violation of the county treasurer's act and the corrupt practices act, are fatally defective. (See *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 425 (1978).) We recognize that an indictment that improperly fails to charge a mental state may not be defective if the crime charged is of such a nature that it is virtually impossible for a person to commit the crime and not have a guilty mind. (See, *e.g.*, *People v. Shelton*, 42 Ill. 2d 490, 494-95 (1969).) However, it would not be inconceivable for Clark to have received the rewards and perquisites charged in the indictments and not realize that they were being proffered to him as a reward for past official acts or with the intent to influence him in the performance of future official acts. As a consequence, we reverse the three convictions of Clark for violation of the county treasurer's act; and the three convictions of Clark for violation of the corrupt practices act.

### As to the Defendant Richard L. Curtis (77-446)
### Claimed Evidentiary Errors

Curtis, in addition to those claims of error in which he has joined with Clark, urges that the judgment against him should be reversed or a new trial granted for a number of reasons. Among the most substantial of these separate claims in our view are his contentions that the highly inculpatory "Murphy letters" should not have been admitted as evidence against him in the absence, he argues, of proof that he authorized, ratified or adopted the correspondence; and that the court should have given his tendered

instruction as to the bar of the statute of limitation based on any charges which occurred prior to June 9, 1973.

The letters written on Michigan stationery signed by Murphy and all addressed to O'Malley at Drovers (admitted over the objection of both Clark and Curtis) included statements that Michigan guarantees the $18,000 uninsured loan to Clark (People's exhibit No. 26); agrees to repurchase Clark's $50,000 secured loan on default (People's exhibit No. 29) and agrees to repurchase the secured loans totaling $419,000 extended Clark in the event of default (People's exhibit No. 30). No limiting instructions were given relative to exhibits Nos. 26 or 30. As to exhibit No. 29, the judge remarked that it should be admitted only as to Curtis.

■■ ■ Murphy was not a party nor was he shown to be an agent or servant of Curtis. Foundation proof sufficient to show that the letters were written with Curtis' authority or that he later ratified them were a requisite to their proper admission. (*Merchants' National Bank v. Nichols & Shepard Co.*, 223 Ill. 41, 49 (1906); *Kapelski v. Alton & Southern R.R.*, 36 Ill. App. 3d 37, 42 (1976).) There is no proof that Murphy had been authorized by Curtis to write the letters of guarantee to Drovers or had expressly ratified them. Murphy in fact testified that he wrote the letters on his own authority and did not seek permission from Curtis. He said that O'Malley had asked for "take out" or repurchase letters from time to time and that he, Murphy, would talk to Curtis about it; that Curtis continued to say words to the effect that he, Curtis, would take care of it; but that when this was not done by Curtis, Murphy responded to pressure from O'Malley, which, added to Murphy's personal problems and pressures, caused him to write letters. Since the letters, therefore, were not either an admission by a party to the proceeding nor by one authorized to speak for a party they were improperly received as admissions. *Sidwell v. Sidwell*, 75 Ill. App. 2d 133, 140 (1966). See also Fed. R. Evid. 801(d)(2)(C).

■■ The error nevertheless was not sufficiently prejudicial to call for reversal or for a new trial. In view of the substantial other evidence in the record to show that Curtis had arranged to have Michigan promise to repurchase Clark's loans if they were in default, the admission of the letters is harmless beyond a reasonable doubt. There was evidence that Curtis had written a memo to the cashier of Michigan on September 10, 1974, directing the cashier to increase Michigan's balance at Drovers by a total of $30,000 and that Clark would in turn increase his deposits at Michigan "by a substantial amount." Further, there was testimony that Curtis had notified Whelan to keep the transaction confidential. The foregoing evidence, together with the fact that the Clark loans took place at a time when Du Page County began to make large deposits at Michigan, constitutes strong circumstantial evidence tending to prove Curtis' guilt. Therefore, it cannot be said that the State's case would have

been "significantly less persuasive" in the mind of the average juror but for the incorrectly admitted evidence. *Schneble v. Florida*, 405 U.S. 427, 432, 31 L. Ed. 2d 340, 345, 92 S. Ct. 1056, 1059-60 (1972). See also *People v. Henenberg*, 37 Ill. App. 3d 464, 469 (1976).

## Statute of Limitations Defense

■■ We next consider Curtis' claim that he was convicted of crimes already barred by the three year statute of limitations (Ill. Rev. Stat. 1975, ch. 38, par. 3—5(b)) and that his tendered instruction on the statute was improperly denied. The argument is premised on the fact that the indictments were issued on June 9, 1976, and included charges of activities which took place prior to June 9, 1973. The State responds that criminal liability for the acts taking place before June 9, 1973, is not barred by the statute but is saved by the "series of acts" exception of the Criminal Code. (Ill. Rev. Stat. 1975, ch. 38, par. 3—8.) We agree.

■ It was the State's burden to plead and prove that the acts prior to June 9, 1973, formed part of a series of related acts constituting a single course of conduct extended over a period of time. (*People v. Munoz*, 23 Ill. App. 3d 306, 308 (1974); *People v. Haycraft*, 3 Ill. App. 3d 974, 976 (1972). See also Ill. Ann. Stat., ch. 38, par. 3—5(b) (Smith-Hurd 1972).) Here, the State satisfied the burden by alleging the making of additional loans to Clark by Drovers and Oak Park at the same time Du Page County funds were being kept, and, at times increased at Michigan. Each of these extensions would have been a separate crime but they also formed a series of acts performed at different times, the last of which were within the limitations.

■■ The instructions tendered by Curtis would have prohibited the jury from finding an offense based upon a series of acts performed at different times, some of those being prior to June 9, 1973. The trial court therefore properly refused to give the tendered instructions.

■ We have also considered whether in the interest of doing justice the trial court should have *sua sponte* instructed the jury that it could not find the defendant Curtis guilty of crimes occurring before June 9, 1973 unless they found those acts part of a continuing series of acts, the last of which occurred after June 9, 1973. (See Ill. Rev. Stat. 1975, ch. 110A, par. 451; *People v. Parks*, 65 Ill. 2d 132, 137 (1976).) This court has held to the general rule that a trial court is under no duty to give instructions not requested by counsel except certain fundamental instructions such as the presumption of innocence and reasonable doubt and stating and defining the elements of the crime. (*People v. Doss*, 26 Ill. App. 3d 1, 14 (1975).) In *People v. Carman*, 385 Ill. 23, 25 (1943), the supreme court held that when it appears on the face of an indictment that the crime alleged falls outside the limitations statute, the pleading of an exception is a material averment

of the indictment which must be pleaded and proved by the prosecution. See also *People v. Munoz*, 23 Ill. App. 3d 306, 308 (1974), where we held that where the State seeks to avoid the bar of limitation the exception relied upon becomes a material allegation. (See also *People v. Hawkins*, 34 Ill. App. 3d 566, 568 (1975).) We conclude that an instruction should have been given to the jury that it must find that at least one act in a series of acts occurred after June 9, 1973.

■■ However, even when an instruction should be given as to the elements of an offense the error may be harmless on the whole record. (See *People v. Gersbacher*, 44 Ill. 2d 321, 326 (1970). See also *People v. Brown*, 9 Ill. App. 3d 730, 737 (1973).) In this case the evidence introduced as to the acts occurring prior to June 9, 1973, and those occurring after that date were essentially the same. The acts complained of were also essentially the same. It seems impossible that the jury could have believed the witnesses and exhibits as to acts occurring prior to June 9, 1973, yet disbelieved that those same acts occurred after June 9, 1973. Therefore, the trial court's failure to instruct does not rise to the level of plain error.

### Bribery

Curtis also contends that no bribery was committed because there was no proof that there was a permanent transfer of anything of value. He contends that all Clark received was a loan which he was obligated to repay and as to which he put up substantial collateral.

Bribery as relevant is defined as:

> "With intent to influence the performance of any act related to the employment or function of any public officer, public employee or juror, he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept; * * *." Ill. Rev. Stat. 1975, ch. 38, par. 33—1(a).

■■ Curtis admittedly assisted Clark in obtaining the loans. The fact that Clark was obligated to repay these loans does not preclude a finding by the jury that the assistance was a tender of personal advantage which Clark was not authorized to accept under section 20 of the county treasurer's act. Ill. Rev. Stat. 1975, ch. 36, par. 36; see *Isaacs v. United States*, 493 F.2d 1124, 1138-46 (7th Cir. 1974).

Curtis also renews his argument which was rejected by the trial court prior to trial to dismiss the indictments on the ground that they failed to state an offense against him. Essentially he argues that the counts charging him with bribery (counts XIX, XX, XXI) omit the essential allegation that Clark was unauthorized by law to accept loans. He further argues that the indictments were improper because they used the words "caused to be tendered" (property or personal advantage to Clark) instead of the statute

language "tender." (Reliance is placed on Ill. Ann. Stat., ch. 38, par. 33—1, Committee Comments, at 370 (Smith-Hurd 1970).) He argues that the word "directly" in the comment is meant to proscribe a direct tendering of a bribe. He also argues that the counts (XXII, XXIII, XXIV) charging him with violation of the county treasurer's act did not include the essential element of the crime that the loans were an illegal fee, perquisite or emolument.

██ It is not disputed that an indictment must set forth the nature and elements of the offense charged with sufficient particularity to apprise a defendant of the crime charged, to enable him to defend and to permit a conviction or acquittal to stand as a bar to a subsequent prosecution for the same offense. See, *e.g.*, *People v. Mahle*, 57 Ill. 2d 279, 283 (1974).

 Upon our review of the indictments we conclude that they are in compliance with the applicable standards. They are substantially in the language of the statute. The counts charging bribery were not required to allege the conclusion that Clark was unauthorized by law to accept each of the loans alleged to have given him a personal advantage inasmuch as the circumstances surrounding the transactions are set forth quite completely and thus charge the illegality of the acceptance of the loans. See *People v. Grieco*, 44 Ill. 2d 407, 409-10 (1970). See also *People v. Dzielski*, 130 Ill. App. 2d 581, 585 (1970).

██ We also conclude that the use of the words "cause to be tendered" rather than "tendered" is an insubstantial deviation considering, again, that the circumstances charged are clearly set forth.

The failure to specifically allege that the loans were an illegal fee, perquisite or emolument may be similarly analyzed. The indictment alleges that Clark received loans because of the deposit of county funds. Counts XXII, XXIII and XXIV allege that the loan arrangements were fees, perquisites and emoluments. The law forbids a county treasurer from receiving anything in addition to his salary for the performance of his office. (Ill. Rev. Stat. 1975, ch. 36, par. 36. See also *People v. Foster*, 133 Ill. 496, 519 (1890).) The State was not required to allege that the loans stated to be such additional payments were intrinsically unlawful. A statement of the crime was complete when the nexus between the loans and the deposits of county funds was alleged.

## Motion to Transfer Place of Trial

Curtis also contends that the trial court erred in refusing to grant his motion to transfer the place of trial from Du Page County (Ill. Rev. Stat. 1975, ch. 38, par. 114—6) because of alleged extensive pretrial publicity concerning Clark. The fact that there is pretrial publicity does not, per se, require that a trial be moved, and each case must be judged on its own facts. (*People v. Madison*, 56 Ill. 2d 476, 486 (1974).) On voir dire each

juror was examined as to the degree of prejudice caused by the media coverage. Of the jurors questioned 28 of 37 stated they had no knowledge of the alleged crime or that their knowledge was limited to headlines in the newspapers. The defense used only 9 of the 24 peremptory challenges, the State but 3. Only 11 of the veniremen were excused for cause, 4 of the 11 being excused because of a dispute involving the language of one question asked by a defense attorney. Each of the veniremen who claimed to have followed the newspaper reports was excused. Twelve jurors plus 2 alternate jurors were chosen out of a panel of 37 veniremen questioned. When the panel of twelve was completed the defendant still had 15 peremptory challenges remaining. Anyone who showed any signs of prejudice or had read extensively about Clark was excused for cause. Further, it appeared that a significant number of jurors did not even know that Clark was the county treasurer. Each juror chosen stated either that he did not have any knowledge of the case or that his knowledge was limited to newspaper headlines; and each juror chosen testified that he was able to render an unbiased and fair decision and that he had no preconceived notions of the guilt or innocence of any of the defendants. The defendants were apparently satisfied with the panel selected as no challenge for cause was made to any of them. See *People v. Gendron*, 41 Ill. 2d 351, 356 (1968). See also *People v. Brinn*, 32 Ill. 2d 232, 236 (1965).

██ It therefore appears that the pretrial publicity surrounding Clark did not so prejudice the defendant Curtis as to deny him a fair trial, and the court did not abuse its discretion in overruling his motion for a change of the place of trial.

### Instructions
### Mens Rea re Bribery Counts

Curtis also argues that the trial court erred in failing to instruct the jury that it must find that he "knowingly" promised Clark property or a personal advantage and that he "knew" that Clark was "unauthorized by law" to accept the same. The jury was instructed in the statutory language following IPI Criminal No. 21.08 that the State must prove that Clark was a public officer, that he promised or tendered to Clark property or personal advantage, that Clark was not authorized by law to accept the property or personal advantage and that "Defendant Curtis did so with intent to influence the performance of any act relating to the defendant Clark's employment as a public officer."

██ We are not persuaded by the argument that the word "knowingly" should be added to the instruction. If the jury believed that the connection was shown between the deposits of the county funds and the loans made to Clark and that Curtis promised or tendered to Clark such

property or personal advantage it is inconceivable that Curtis would not have had the necessary intent. Likewise it was not a requirement that the jury find as a fact that Curtis knew the law, *i.e.*, that Clark was unauthorized by law to accept the property or personal advantage, since section 4—8 of the Criminal Code provides that a mistake of either fact or law is not a defense to a criminal charge unless it negates the existence of a mental state. (See Ill. Rev. Stat. 1975, ch. 38, par. 4—8(a).) To be convicted of a crime the defendant must have given property or personal advantage with intent to influence the performance of an act of a public official and the jury was so instructed. The fact that Curtis may not have known that it was illegal to procure these loans for Clark is irrelevant as long as he did in fact procure them with intent to influence Clark as the treasurer of Du Page County. The instruction tendered by Curtis was therefore an improper statement of the law and as such properly refused. See *People v. Lyons,* 4 Ill. 2d 396, 401 (1954).

## Mens Rea re the County Treasurer's Act

■■■ Curtis contends that the trial court erred when it failed to charge the jury that there cannot be a violation of the county treasurer's act unless it is shown that Curtis intended to influence Clark in his official capacity. It is admitted that the instruction given followed the language of the statute but the argument is that the statute does not set out all of the requirements for a conviction. However, nowhere in the county treasurer's act does the legislature provide that a bank or its officer must have an intent to influence the county treasurer by giving him a fee, perquisite or emolument. (Ill. Rev. Stat. 1975, ch. 36, par. 17 *et seq.*) Under the statute the payment must be willful, but it need not be made with intent to influence. Since the defendant's instruction was an improper statement of the law adding additional elements not contained in the statute, the trial court properly refused it. *People v. Moorelander,* 25 Ill. 2d 309, 312 (1962); *People v. Baylor,* 25 Ill. App. 3d 1070, 1075 (1975).

## Corrupt Practices

■■■ ■ Curtis tendered instructions to the effect that a public official is not barred by his office from borrowing money, that a bank is not barred by the statute from lending money to a public official and that a loan is not property. The tendered instructions do not correctly state the law and were properly refused. A bank may be barred by the county treasurer's act from lending money to an official if the loan is a fee, perquisite or emolument given to the official as a reward for the deposit of county funds. (Ill. Rev. Stat. 1975, ch. 36, par. 38.) The relevant law was stated in the instructions in the terms of the statute. (See *People v. Cesarz,* 44 Ill. 2d

180, 190 (1969).) The word "property" which Curtis sought to have the trial court define is a word of common usage and understanding which did not require further definition. See *People v. Watson,* 19 Ill. App. 3d 854, 855 (1974).

## *"Loan"*

██ Curtis tendered an instruction defining the word "loan" as an advance of money against the absolute promise to repay, which the borrower both recognizes and expects to repay, at interest, which the court refused. We find no error. The word "loan" is commonly used and understood by laymen and there was nothing in the case that might have obscured the meaning of the word. The meaning of words used in their conventional sense need not be defined or explained in giving instructions to a jury. *Larson v. Commonwealth Edison Co.,* 33 Ill. 2d 316, 323 (1965). See also *People v. Monroe,* 32 Ill. App. 3d 482, 488 (1975), *aff'd,* 66 Ill. 2d 317 (1977).

## Conviction of Clark Based on
## Receipt of Benefits Alone

As we have previously noted the trial judge correctly informed the jury of the mens rea ingredient required for an act of bribery, *i.e.,* intent to influence on the part of the briber and knowledge of the briber's intent on the part of the bribee. Therefore, it was not error to refuse the instruction as it related to the bribery counts.

In substance the trial judge instructed the jury over the defendant's objection that if Clark received anything of value as a gift or bribe or as a means of influencing his action in an official capacity either directly or indirectly he would have offended the corrupt practices act. Under the trial court's theory Clark would have offended the act by accepting credit extended to him by a bank through the good offices of an officer of the bank as a reward for an official act even if Clark were totally unaware that the credit in question had been arranged by the bank officer. In effect the trial court's view of the corrupt practices act was that it imposed strict liability. The instruction as to the violation of the county treasurer's act was on the same theory. We conclude, however, that neither the corrupt practices act nor the county treasurer's act was intended to impose strict liability. (As to the county treasurer's act and strict liability, see discussion of this point in the section of this opinion that deals with the constitutionality of the county treasurer's act; as to the corrupt practices act and strict liability, see *People v. Malone,* 71 Ill. App. 3d 231 (1979).)

██ ██ In *People v. Savaiano,* 66 Ill. 2d 7 (1976), the supreme court refused to reverse on the basis of "overbroad" instructions finding that

they caused no substantial prejudice. (66 Ill. 2d 7, 19.) We also find no substantial prejudice to Curtis here. The jury here convicted the defendant Clark of official misconduct and bribery. Under the instructions given as to these crimes, it could not have convicted him of bribery unless it found that at the time he accepted credit from Drovers and Oak Park he "knew that the property or personal advantage was tendered by defendant Curtis with intent to cause the defendant to influence the performance of any act relating to the employment or function of a public officer." Under the instructions given, the jury could not have found Clark guilty of official misconduct unless it found that he "knowingly accepted for the performance of an act a fee or reward which he knew was not authorized by law." Therefore the error as to Curtis must be deemed harmless. See *People v. Truelook*, 35 Ill. 2d 189, 192 (1966); *People v. Bussie*, 41 Ill. 2d 323, 328-29 (1968).

### Duty to Turn Over Fees to County Treasury

■■ We find no error here. It is not the debts which clearly cannot be transferred to the County of Du Page but rather the act by Drovers and Oak Park of extending credit to Clark that constitutes the fee or emolument. The fact that there were no gains in the transaction and that it is impossible to transfer Clark's debts to the county does not indicate that the extension of credit to him could not be a forbidden emolument.

### Circumstantial Evidence Instruction

■■ The trial judge gave the first paragraph of the circumstantial evidence instruction (IPI Criminal No. 3.02), but refused to give the second part. The committee notes indicate that the paragraph referencing the exclusion of every reasonable theory of innocence should be given only when the proof of guilt is entirely circumstantial. This was not the case here. There were admissions by Clark if Murphy's testimony were given credibility. There were also admissions by Curtis. Both were direct evidence of the guilt of defendants. See *People v. Green*, 17 Ill. 2d 35, 41 (1959). See also *People v. Brooks*, 7 Ill. App. 3d 767, 781 (1972).

### Instruction re Credibility of Murphy

■■ Curtis tendered and was refused an instruction based on the evidence that Richard Murphy, one of the State's key witnesses, was an alcoholic during part of the crucial time period of 1971-1975 to the effect that the testimony of one so addicted "should be received by the jury with great caution and suspicion * * *." We find no error that the judge informed the jury in the traditional manner that they were the sole judges of the credibility of the witnesses and the weight to be given to the

testimony of each of them. (IPI Criminal No. 1.02.) We do not conclude that the same considerations require a cautionary instruction based on alcoholism as may be proper when a narcotics addict testifies for the State. See *People v. Perkins*, 26 Ill. 2d 230, 234 (1962). See also *People v. Phillips*, 126 Ill. App. 2d 179, 186-87 (1970).

## Other Instructions

We have considered various other instructions which were tendered by Curtis and which the court refused to give, and we find no error. In many instances the instructions are different statements of various points which we have already considered and in others we find that the proposed instructions were inapplicable under the facts.

## Forms of Verdict

██ Curtis contends that the verdict forms were inadequate and prejudicial. He argues that the general verdicts as to each offense charged were inadequate because they do not relate the material elements of the substantive crimes but merely refer to the "violation" of either the bribery statute or the county treasurer's act. We cannot agree.

The Code of Criminal Procedure of 1963 requires that a jury return a general verdict as to each offense charged (Ill. Rev. Stat. 1975, ch. 38, par. 115—4(j)), and the cases hold that the verdict must respond to the issues submitted to the jury and must contain every material element of the crime either in itself or by reference to the indictment. (See, *e.g.*, *People v. Ellis*, 309 Ill. 51, 52 (1923).) It is also true that verdicts should not be construed as strictly as pleadings but should receive a reasonable construction and not be set aside unless there is doubt in their meaning or failure to make a finding on a material issue. (See *People v. Lee*, 237 Ill. 272, 275 (1908).) However, we find the verdicts did not transgress the rules. The jury returned a general verdict as to bribery relating to Clark's loans and loan renewals at Drovers through August 1974, and interest due in September 1974 on the loans; bribery relating to defendant's loans and loan renewals at Oak Park; to violation of the county treasurer's act relating to Clarks' loans and renewals at Drovers through August of 1974; violation of the treasurer's act relating to interest due September 1974 on Clark's loans at Drovers and violation of the county treasurer's act relating to Clark's loans and renewals at Oak Park. Therefore the intention of the jury can be reasonably ascertained by looking at the verdict. It was not subject to the infirmity of *People v. Manning*, 320 Ill. App. 143, 146 (1943), where the jury set out the elements of the crime charged, made findings as to some of these elements but failed to do so as to several others. The jury's intention can be ascertained with reasonable certainty and therefore

the form of the verdict is not to be considered so improper or prejudicial that a valid judgment could not have been entered on each. *People v. Polk*, 10 Ill. App. 3d 408, 415 (1973).

### Prosecutor's Argument

■■ The prosecutor in closing argument stated:

"There was never any testimony that the Michigan Avenue executive committee knew that Michigan Avenue, through Mr. Curtis, had agreed to repurchase the loan."

Curtis objected to this statement and moved for a mistrial. The court sustained the objection but denied the motion for a mistrial. Curtis here argues that the statement is actually an indirect reference to his failure to take the witness stand or to call witnesses. However, fairly read, we conclude that the statement simply suggests that the evidence is that Curtis arranged for the loans in question on his own authority.

### Reasonable Doubt

■■ We conclude that the proof that Curtis intended to influence the performance of Clark was proved beyond a reasonable doubt. Curtis reasons that the State failed to prove that he possessed a specific intent to influence the performance of any public officer. In support of this argument he notes the openness of the transaction and the fact that Curtis received no personal benefit for procuring the loans for Clark. Intent, of course, may be established by circumstantial evidence. (*People v. Triplett*, 46 Ill. 2d 109, 112 (1970).) The substance of Curtis' claim is that he was nothing more than a helpful banker attempting to compete fairly for Du Page County funds. However, there is sufficient evidence from which the jury could have concluded otherwise. See *People v. Wilcox*, 33 Ill. App. 3d 432, 438 (1975).

The loans came shortly after Clark had requested the county board to designate Michigan as a depository. As the county balances rose in Michigan so did Clark's indebtedness to Drovers and Oak Park. Funding arrangements were set up to admittedly increase Michigan's demand deposits in Drovers and Oak Park. Curtis' memorandum to the Michigan cashier requested that the deposits at Drovers be increased by $30,000 indicating that they were being made because of the loans to Clark and that the Du Page County balances would be increased by a substantial amount. A similar arrangement was consummated with Oak Park, losses being guaranteed by Michigan and a full funding agreement being honored. A letter sent by Curtis to Oak Park requested additional funds for Clark commenting upon the present excellent relationship between Clark and Michigan. Murphy, the former officer at Michigan, testified under immunity that Clark told him he was aware of what Michigan was doing and would reciprocate.

## Variance

■■■ We also find no merit in the defendant Curtis' contention that there was a fatal variance between the allegations on count XX of the indictments and the proof offered on this point. Count XX charged that $30,000 was transferred to Drovers for the benefit of Clark. The proof adduced at trial, however, indicated that $30,000 was transferred to Michigan's account at Drovers, and not to Clark's personal account.

Essential allegations of an indictment must be proved without variance and an essential element of a crime cannot be inferred but must be established with positive proof. (*People v. Mosby*, 25 Ill. 2d 400, 403 (1962).) The variance will not, however, be considered material unless it is of such a substantial nature as to mislead the accused in making his defense or expose him to second jeopardy from the same offense. (*People v. Nelson*, 33 Ill. 2d 48, 52 (1965); *People v. Moore*, 368 Ill. 455, 457 (1938); *People v. Merrill*, 76 Ill. App. 2d 82, 87-88 (1966).) Curtis' argument is essentially that he was prejudiced in that the indictment accuses him of giving Clark $30,000 through Drovers.

Reading count XX as a whole it is clear that the property or personal advantage transferred to Clark was the extension of additional credit when Drovers had refused to make further extensions. Count XX alleges that $30,000 was transferred to Drovers for the benefit of Clark. Additional loans were then extended by Drovers when it had previously refused to do so.

It is clear that count XX of the indictments as drawn would prevent further jeopardy. (See *People v. Mosby*, 25 Ill. 2d 400, 402.) Further, count XX alleges those facts necessary to allow the defendant to formulate his defense. (*People v. Nelson*, 33 Ill. 2d 48, 52 (1965).) The fact that several words taken out of context might lead the jury to an improper theory of the case should not invalidate the conviction when that count of the indictments read as a whole clearly alleges the crime proved at trial. See *People v. Moore*, 368 Ill. 455, 457-58 (1938).

## Concurrent Sentences

■■■ We have reversed Clark's convictions on three counts of violating the county treasurer's act (Ill. Rev. Stat. 1975, ch. 36, par. 38) and on three counts of violating the corrupt practices act (Ill. Rev. Stat. 1975, ch. 102, par. 3), on the grounds that that portion of the indictments that charged these offenses was fatally defective. Clark remains convicted of the remaining charges of three counts of bribery and three counts of official misconduct.

Under the State's theory, Clark's actions, in the period March, 1971-August 1974, in depositing Du Page County funds at Michigan and in receiving loans from Drovers, constituted a single offense of bribery.

Also, under the State's theory, these identical acts constituted an offense of official misconduct. Further, under the State's view, Clark's actions, in September 1974, in receiving loan renewals from Drovers in exchange for a promise to increase Du Page County deposits at Michigan, amounted to a second offense of bribery. In the State's view, these identical acts also constituted a second offense of official misconduct. Finally, Clark's actions in receiving loans and loan renewals, in the period 1971-1974, from Oak Park as a reward for the deposit of county money at Michigan made up a third offense of bribery. According to the State's charge, these precise acts, without more, also made up a third offense of official misconduct.

"Prejudice results to the defendant * * * in those instances where more than one offense is carved from the same physical act. * * * Multiple convictions and concurrent sentences should be permitted in all * * * cases where a defendant has committed several acts, despite the interrelationship of those acts." (*People v. King*, 66 Ill. 2d 551, 566 (1977).) In the instant case, Clark's convictions on three counts of bribery are based on three acts or three series of acts. It appears that his convictions on three counts of official misconduct are based on precisely the same three acts or series of acts. This is so even though the defendant, at the time of each act charged, had both the mens rea necessary to commit official misconduct, *i.e.*, knowledge that he is being rewarded for past favors or anticipated future favors, and the more specific mens rea required for bribery, *i.e.*, knowledge that he is being rewarded for anticipated future favors. As a consequence, it is necessary to reverse one of the two sets of convictions. *People v. King*, 66 Ill. 2d 551, 566; *People v. Bostick*, 60 Ill. App. 3d 581, 585-86 (1978); *cf. People v. Moore*, 61 Ill. App. 3d 694, 702 (1978).

In *City of Chicago v. Hill*, 40 Ill. 2d 130, 136-37 (1968), the supreme court held, in a similar case, as follows:

> "In such a situation the intent of the legislative body is best served, in our opinion, by setting aside the conviction for the more general offense. See generally Remington & Joseph, Charging, Convicting and Sentencing the Multiple Offender, 1961 Wis. L. Rev. 528; Note, Consecutive Sentences in Single Prosecutions: Judicial Multi-plication of Statutory Penalties (1958), 67 Yale L.J. 916."

Here, the more general offense is official misconduct. Hence, we reverse Clark's convictions on three counts of official misconduct.

■■ Curtis was convicted on three counts of bribery and on three counts of violating the county treasurer's act. The three counts of bribery were based on three separate acts or series of acts. However, the three charges of violating the county treasurer's act appear to be based on precisely the same three acts or series of acts as the three bribery charges. Hence, one

of these two sets of convictions must be reversed. Since bribery is the more general of the two offenses (bribery and violation of the county treasurer's act), we reverse the convictions of Curtis on three charges of bribery.

### Conclusion

We reverse the convictions of Clark on three counts of violating the county treasurer's act; three counts of violating the corrupt practices act; and three counts of official misconduct. We affirm Clark's convictions on three counts of bribery.

We reverse Curtis' convictions on three counts of bribery. We affirm Curtis' convictions on three counts of violating the county treasurer's act.

Affirmed in part; reversed in part.

LINDBERG and NASH, JJ., concur.