THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE
RUANO, Defendant-Appellant.

First District (1st Division)    No. 1—92—0900

Opinion filed February 22, 1994.—Rehearing denied June 14,
1994.—Modified opinion filed June 20, 1994.

Rita A. Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public
Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D.
Carroll, and Eileen Rubin, Assistant State's Attorneys, of counsel), for the
People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the
court:

Following a jury trial in the circuit court of Cook County, defen-
dants Jose Ruano and Jesus Prado were each found guilty of

attempted murder and aggravated discharge of a weapon. Ruano and Prado were sentenced to 24 and 21 years, respectively, in the Illinois Department of Corrections. Defendant Ruano now appeals.

The record on appeal indicates the following facts. Ruano and Prado were charged with three counts of attempted murder and three counts of aggravated discharge of a weapon. It was alleged that on September 7, 1991, the two men fired handguns at or in the direction of Chicago police officers Edmund Leracz and Jack Hines as well as a television photographer and producer named John Wright in the vicinity of the intersection of 88th Street and Commercial Avenue.

Officers Leracz and Hines testified that they were detectives with the Area 2 Violent Crimes Division of the Chicago police department on Sept. 7, 1991, when they were assigned to investigate a fatal shooting at the corner of 88th and Houston at approximately 2 a.m. Leracz testified that upon reaching the intersection, four to six males fired upon him; Leracz pursued the men across Commercial Avenue toward Exchange. Leracz testified that Ruano was one of the men he was chasing. Leracz indicated that he next saw Ruano in the back of a squad car driven by officers who were also involved in the pursuit.

Officer Hines testified that when he heard gunfire at the intersection, he exited the squad car and drew his weapon. Hines indicated that shots came across the front of the squad car. Hines testified that he saw Prado point a gun and fire in his direction. Hines fired five return shots; Prado fell to the ground, but then arose, stumbled and fled the scene. Hines testified that he saw Prado again in the custody of Area 2 detectives. Hines testified that he stated that Prado was the one who shot at him and that he thought he had hit Prado. The other officers replied that Hines did hit Prado and pointed at Prado's leg.

John Wright testified that he was videotaping a street sign at the intersection of 88th and Houston when he heard a bullet fly over his head, striking the sign and the lights on his camera. Wright testified that he saw four to six people shooting on the northwest corner of the intersection. Wright indicated that it appeared from the muzzle flashes that two people were firing at him and that the others were firing at Officer Leracz. Wright testified that he saw one of the men very distinctly. Wright videotaped a portion of the incident; this tape was shown to the jury. After the shooters fled with the police in pursuit, Wright got into his car then met up with several police cars. Wright testified that he identified Ruano at that time as the person who fired at him. Wright also testified that he identified Ruano again in a lineup at Area 2 headquarters.

Robert Berk, a trace evidence analyst with the Chicago police

department crime laboratory, testified that he analyzed a gunshot residue test of Ruano's hands and that the results of this test were positive, suggesting that Ruano had handled, been in close proximity to or fired a weapon. Berk also testified that the elements found in the test are present in other substances and can be transferred from hand to hand.

John Gorman, another detective with the Area 2 Violent Crimes Division of the Chicago police department, testified regarding a conversation he had with Prado following the arrest. According to Gorman, Prado was shown a picture of Ruano. Gorman testified that Prado indicated that Ruano had been with him that night. Prado later testified that he had indicated that he had seen Ruano earlier in the evening, but had not said that he saw Ruano at the intersection of 88th and Commercial.

Assistant State's Attorney Peter Fischer testified regarding a conversation he had with Ruano following the arrest. Fischer testified that Ruano identified himself as a member of a street gang called the Dragons. According to Fischer, Ruano initially denied involvement with the shooting at 88th and Houston, but later admitted that he had gone with four other Dragons to retaliate for the shooting of members of an allied gang called the Very Mellow Peoples by a rival gang known as the Spanish Gangster Disciples. According to Fischer, Ruano stated that it was other Dragons who fired on people at the intersection of 88th and Houston.

Following closing arguments and jury instructions, the jury found Ruano and Prado guilty of attempted murder and aggravated discharge of a weapon. Ruano and Prado were sentenced to 24 and 21 years, respectively, in the Illinois Department of Corrections. Ruano now appeals.

## I

Defendant initially contends that he was denied his rights to a unanimous jury verdict and a fair trial by non-pattern jury instructions that combined the defendants and the charges. Defendant concedes that his counsel failed to object to the instructions at trial, which normally results in waiver of the objection on appeal. However, defendant contends that this court should consider the objections pursuant to Illinois Supreme Court Rules 451(c) and 615(a) (134 Ill. 2d Rules 451(c), 615(a)).

■ In this case, however, defendant makes no attempt to argue that the evidence here is closely balanced. Thus, defendant has failed to show that the interests of justice require a departure from the standard rules of waiver in this case.

Assuming *arguendo* that the objections were preserved, they would fail to persuade this court. Defendant's strongest objection is that the first district, third division, recently held that it was plain error to provide only one set of verdict forms where three counts were charged. (*People v. Scott* (1993), 243 Ill. App. 3d 167, 169, 612 N.E.2d 7, 9.) However, the first district, first division, has expressly declined to follow *Scott*. (*People v. Diaz* (1993), 244 Ill. App. 3d 268, 273, 614 N.E.2d 268, 272.) The *Diaz* opinion also distinguished *Scott*, noting that the defendant in that case was charged for three unconnected transactions instead of one transaction or series of connected acts. (*Diaz*, 244 Ill. App. 3d at 273, 614 N.E.2d at 272; see *Scott*, 243 Ill. App. 3d at 168, 612 N.E.2d at 8.) This case arises out of a single shooting incident.

Moreover, while *Diaz* was concerned more with the instructions than the verdict forms at issue in *Scott*, the *Diaz* court referred to the rule that a general verdict is presumed to be based on any charge to which the proof is applicable. (*Diaz*, 244 Ill. App. 3d at 273, 614 N.E.2d at 272.) Defendant claims that the verdict forms in this case are not general, but the case upon which defendant relies for this proposition, *People v. Manning* (1943), 320 Ill. App. 143, 50 N.E.2d 118, does not support this assertion. In *Manning*, the jury rendered a verdict which made findings as to some elements of a charge, but not others. In contrast, the jury here rendered a general verdict as to each offense charged, as required by the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1991, ch. 38, par. 115—4(j); see also *People v. Clark* (1979), 71 Ill. App. 3d 381, 417-18, 389 N.E.2d 911, 936-37 (construing statute and *Manning* decision).) Thus, the intention of the jury can be ascertained with reasonable certainty in this case.

Defendant also claims that it was error for the instructions to combine the defendants. However, the case upon which defendant relies, *People v. Wilkerson* (1981), 87 Ill. 2d 151, 159, 429 N.E.2d 526, 529, indicates that combining the defendants does not warrant reversal where the instructions will not confuse the jury. Defendant has failed to show how the jury could have been confused in this case. Indeed, defendant conceded at oral argument that each defendant's separate instructions would have been identical. Consequently, it would appear that the form of the instructions and verdict forms do not warrant a relaxation of the rules of waiver in this case.

Defendant also claims that the substance of the attempted murder instruction was defective. Defendant makes the argument in passing and cites no authority to support it, resulting in waiver.

Assuming *arguendo* that the objection was preserved, it would

fail to persuade this court. The alleged problem appears to be that the attempted murder instruction is an instruction for attempted first degree murder based on the general attempt instruction now embodied in Illinois Pattern Jury Instructions, Criminal, No. 6.05 (3d ed. 1992) (hereinafter IPI Criminal 3d)). The notes accompanying this instruction indicate that this instruction should not be used where the charge is an attempt of first degree murder; IPI Criminal 3d No. 6.05X should be used instead. However, the reason for IPI Criminal 3d No. 6.05X is that the general instruction did not specify that intent to kill was required to show attempted murder. In this case, the instructions, read as a whole, make it clear that an intent to kill was required. Thus, the instructions fairly informed the jury of the applicable law.

Defendant further claims that the failure to object to the instructions tendered in this case may constitute ineffective assistance of counsel. However, a similar argument was rejected by our supreme court in *People v. Leger* (1992), 149 Ill. 2d 355, 401-05, 597 N.E.2d 586, 606-08, another case which involved allegedly defective attempted first degree murder instructions.

In sum, even if defendant had not waived his objections to the jury instructions and verdict forms, the jury instructions were not so defective that a reversal would be mandated.

II

■ Defendant also claims that the trial court abused its discretion in sentencing him to 24 years in prison. The sentencing decision of the trial court is entitled to great weight and deference; this court will not disturb that determination absent an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

Defendant claims that the trial court abused this discretion because he was 24 years old, did not cause actual physical harm, and had only one prior conviction for a nonviolent offense for which he was sentenced to probation. However, the record shows that the trial court considered these factors in imposing a sentence that falls within the statutory range. Consequently, defendant has failed to show an abuse of discretion in this case.

Defendant also claims, however, that the common law record should be corrected to show that while he was sentenced to 24 years in prison for attempted murder, he was not also concurrently sentenced for the aggravated discharge of a weapon. The State agrees with this contention. Consequently, the case shall be remanded for a correction of defendant's mittimus and sentence.

For all of the aforementioned reasons, the judgment of the circuit

court of Cook County is affirmed and remanded for proceedings consistent with this opinion.

Affirmed and remanded, as modified.

O'CONNOR and MANNING, JJ., concur.